Good morning, your honors. May the police court. My name is Jixuan Li. I'm here on behalf of petitioners. Your honors, in this case, the immigration judge denied the petitioners' application for asylum for one reason. That is, petitioners lack a subjective fear of forced abortion. The IJA specifically found that the petitioners had a subjective fear of forced abortion, but not the objective fear of forced abortion. On appeal, the BIA found that the petitioners no longer had a subjective fear of forced abortion due to passage of time. Your honor, I would urge the panel to reverse this case just to avoid an absurd outcome. The BIA's analysis, if left undisturbed, will lead to a very absurd outcome. It is clearly the congressional intent to protect those who have a well-founded fear of forced abortion. If the court applies to let — if the court allows the BIA's analysis to stand, then nobody under any circumstance would be able to show a well-founded fear of forced abortion. For instance, in this case, let's assume that the IJA found that the petitioners had both a subjective fear and objective fear of forced abortion. Then — and granted my client's application for asylum. Then the government can still appeal to the BIA, and by the time the BIA completes its appeal, the female petitioner will have given birth to a child. And then, according to the BIA's logic, the petitioners will no longer have a subjective — subjective fear of forced abortion. So that outcome is clearly absurd and which must be prevented. The second point that I would like to raise is that because the BIA — the IJA specifically found that the petitioners had a subjective fear of forced abortion, and then on appeal, at the time when I was briefing the BIA, I — petitioners and I were not put on notice that their subjective element of fear was ever in question. So the BIA's analysis focusing on the subjective fear of forced abortion came as a total surprise to petitioners. So therefore, the petitioners' due process rights were violated. So I would ask the panel to — just for that reason alone, this case should be remanded to allow petitioners to present evidence relating to their subject fear of forced abortion. Your Honor, the BIA also found that because — due to the birth in the United States, my client has not shown that any other forms of persecution due to the birth of a child in the United States. The record clearly indicates that because my client, the female petitioner, was not legally married at the time when she was pregnant and subsequently gave birth to a child, and she was subject to forced sterilization based upon the record — the background information in record. I would specifically direct the panel's attention to administrative record at page 233. It states that the birth control policy at one time in Fujian province — that's where petitioners are from — is that all those who marry early and give birth early shall exceptionally undergo sterilization surgeries and shall be levied heavy fines. So therefore, because my client, the petitioners married early and they did not have their marriage legally registered with the Chinese government and they gave birth to a child before their legal marriage, so there were — there are targets for sterilization. So therefore, the birth of a child — the birth of a child in the United States would subject petitioner to new form of forced abortion, even though the forced abortion issue is moot by BIA's analysis. Excuse me. Where do I find that in the record? I'm sorry. I didn't read that, that there is a fear that if she returns to China, she would be automatically sterilized because she had a child at a young age. Where in the record is that? Well, Your Honor, that's 233. What is 2033? 233. 233? Yes, Your Honor. And that's the planned birth propaganda material. So it provides background information supporting petitioners' fear of forced sterilization, even though at the marriage hearing, the focus was on the — on the fear of forced abortion. So because the BIA did not give petitioners an opportunity to refute the BIA's claim that the petitioner no longer had a subject fear — subjective fear of forced abortion, so I would ask the panel to remain the case to the BIA and maybe eventually to the IGA so that McClellan can present evidence either to their subject element of their fear because petitioners — Let me see if I understand your position. Her fear is that — is she married now or is she still unmarried? She's still unmarried. Okay. Your fear is that if she goes back to China as a single person who's given birth early, that because of that, she would be sterilized. Yes. That's one of the possibilities, Your Honor. And is there something in the record that tells us, other than her subjective view, tells us that women who are unmarried and give birth to a child out of wedlock are sterilized? Is there something — Yes, sir. A rule or something objectively that you presented on that issue? Yes, Your Honor. That's exactly what page 233 says. It says if someone who is married early, who got married early, who gave birth early — No, you said she's not married. You said — By Chinese tradition, she is married, Your Honor. She did go through the traditional marriage wedding ceremony. So she had a custom, traditional marriage, but not — her marriage was not recorded. Was not registered. That's correct, Your Honor. Okay. I understand. I would like to — Save some time for — Save some time for possible rebuttal, Your Honor. Thank you for your argument. May it please the Court, Donald Kuvion for Respondent. Your Honors, this case is, I think I could say, a unique case in that we're not talking about a change in country conditions that comes about while the case is in administrative litigation or even before the court. We're talking about a change in a personal circumstance. And the petitioner seems to say that notwithstanding that personal fact of life, that they still have — should have been given an opportunity to respond, whereas the board simply took notice of this personal fact and factored it into one facet of the finding in regards to subjective fear. The board bravado and approved the objective finding in that manner. I wish to also point something out. This is not an unmarried woman. She was married in a traditional village ceremony like in every case that comes before this court. And when she went or they went to register the marriage, that was refused because both families were in serious arrears for various kinds of fines. Including having too many children. On one side, yes, Your Honor. On one side of the — Wasn't there a sister who had a forced abortion? I don't recall, Your Honor. Furthermore — Haven't we recognized a connection between these marriage registration requirements in China and their population control policy in our cases? Yes. Yes. Does that — do those cases have any applicability here? Registration seems to be — I hate to put it that way, but it's never spelled out in any of these cases, but it seems to be nothing more than or less than the state's recognition of the marriage for the principal purpose of according social benefit. Housing, schooling, et cetera. The marriage can occur before or after registration. Sometimes — I hate to be outside the record, but, you know, we see these cases every day. Sometimes the registration occurs first, so it sort of looks like it's permission. And sometimes it occurs afterwards, so it looks like it's an after-the-fact recordation and recognition of something. That seems to be what it is. And this case doesn't show — and I hate to say it, but I've never seen a case where registration is marriage. It ties in — Go ahead. Finish the answer. I have nothing to analyze. Yes, Your Honor. It tied in in one case that Your Honor was referring to where the registration was denied an underage couple. They weren't going to register those people whether they were married or not because they were underage to marry. This couple was of age, and she bore her child as a woman of age and outside of China, which the report seemed to indicate is considered by Chinese expatriates like a free child. There aren't any disabilities, it appears, attached to such a child when the parents are outside the country. Be that as it may, this was obviously something that the petitioner — petitioners did not have to be advised of at all. And I'm sorry, Your Honor, Judge Wallace had a question. I do. If I understood the position of the board on this, it was that the petitioner had focused attention on wanting to prevent an abortion of the child she was carrying. Yes, that's the claim. Excuse me. And then the board took the position that due to the passage of time, that's no longer a problem. So do I understand correctly that the pleadings before the IJ and the board were not for some future conception, but were to protect the child she was then carrying, that she would not be sent back to China to have it aborted? And that the board said that is no longer a problem, and so there's no reason to grant asylum. Now, is that all there was to the petition before the board? Yes, Your Honor. Because counsel indicates that in the record there was something about a fear of sterilization if she goes back. And that didn't square with me with what I read of the board decision. So could you clarify that? I don't think it's in the record before the board. I think that's something that's been asserted here, a claim that we addressed in our third argument about a failure to exhaust. It's a new claim before the court. All right. So they have the option of going back and moving to reopen and starting a new claim. But the board of the decision the board has, we have before the board here, it only deals, if I understand you correctly, with protection of the child she was then carrying, and that child has now been born. That is absolutely correct, Your Honor, and the record will fully support it. So as far as what was before the board, that was the only issue? Yes. And if they now wish to assert another issue, that if they go back with or without this child, she may have penalties or whatever, can they move to reopen on that issue? They could try, Your Honor. They could try to, because there's no time limitation on a motion to reopen involving an asylum claim as long as it involves new facts. Okay. All right. That clarifies it. Thank you. So what opportunity did the petitioner have to address the board's decision that, in fact, this essentially had been, their claim had been rendered moot? Usually, if the board is going to make a decision, we require them to afford on a new ground that was not considered or decided on by the IJ, we require that the board afford the petitioner a chance to brief that. And I gather that's one of the claims today, that the petitioner says we weren't allowed that opportunity to brief. What opportunity did they have? Well, they had no opportunity because it did not involve any change in country conditions, anything that they could try to address. That's why I said in the beginning it's unique. It's a personal fact of their lives that's irrefutable and can't be unknown. Well, what should a petitioner do in this circumstance, understanding what you've just described? File a petition and say, I'm pregnant, I'm going to have a baby in X number of months. If you force me to return to China, I have a legitimate basis and fear that I will be forced into an abortion. And here are the reasons. And then claim two in the alternative, if the board doesn't get to my case before my baby is born, then my position will be that if I go back with this baby that I will be forcibly sterilized. Is that what a petitioner is supposed to do? That would have been a better way to do it, but they didn't do that here, Your Honor. And do I understand from the context of your response to Judge Thomas' question that there's no obligation on the part of the board to allow reopening to present the grounds of fear of forced sterilization? They could grant it if they wanted to. They don't have to. No, Your Honor, I didn't – I hope I didn't say that. I mean, they can always move to reopen for a new reason in an asylum case. And that, in this case, is a new reason that came about along the way. Now, did they – once they received the decision of the board, which in essence said, well, now that you've had the baby, this grounds is no longer applicable, didn't they ask the board at that point to reopen so they could present this claim that they're talking about here today? I didn't see that, Your Honor. I don't think that's in this case at all. We can ask counsel. Yes. No, I'm fairly sure it's not here. Okay. Isn't the logical conclusion of your theory that no forced abortion cases can ever be recognized because, in fact, it will always take more than nine months for the board to reach a decision? There was, under your theory, no possibility that this asylum claim could be granted, even though meritorious at the time. I'm not sure I understand that I said that. No, I'm saying, isn't that the logical conclusion? That's the practical consequence of your position. Of your position. Yes. That in absence of some other circumstance, that when this comes about, that it should moot that limited claim. Okay. Isn't that a – one more question, if I might. Sure. Isn't that, in a reverse situation, the kind of mootness argument that the Supreme Court rejected in Roe v. Wade? I don't recall, Your Honor, whether or not that is the case. Well, that's what they said in Roe, that there was an argument that it's now moot, that there's no pregnancy to be terminated. That's reverse circumstance here. Yes. And they said, no, you can't. That's not a mootness argument we're going to recognize. Why shouldn't the same logic apply to this circumstance, if it's capable of repetition? Well, it may sound flippant, I guess, but it's an immigration case and not an abortion case, as Roe was. That's it. Rebuttal. Thank you for your argument, Mr. Kovane. We'll hear a rebuttal argument at this time. Why don't you start by telling us if you did tell the – ask the Board to reopen after you received the decision? I did not, Your Honor. I did not ask the Board to reopen based upon the birth of the child. But — Did you move for reconsideration or anything like that? I did not, Your Honor. But the BIA's decision apparently considered whether or not the child birth in the United States would result in other forms of persecution. As I said, which – which finding of the BIA is contradictory to the background information in record. The record does support the claim that the – does support that it's likely that the Petitioners would face new form of persecution due to the birth of – due to the child birth in the United States. Well, Your Honor, if you look at the immigration judge's decision, that's on page 43 of the administrative record, is that the judge specifically found in any event neither applicant has established that if they were now to return to China, that it's more likely that the child would be subjected to persecution on account of family planning policies or any other political opinion. So understandably, when I was – because my – my job on appeal is to appeal to the BIA, the immigration judge's decision. So I just focused on – reasonably focused on the immigration judge's decision because it's – it's the IJS decision that – the focus was on the – at the time of the hearing, the mayor's hearing, whether or not they had a fear of forced abortion. So on appeal, understandably, from my perspective, I only focused on the IJS specifically  Okay. Thank you, Your Honor. Seeing no other questions, thank you for your argument. Thank both counsel for their argument. The case just argued will be submitted for decision.
judges: Wallace, Hawkins, Thomas